## Weizer Estate

*J. Brooke Aker,* for petitioner.
*Harry M. Sablosky,* for respondents.

TREDINNICK, *J.,* July 6, 1983—In accordance with the provisions of a post nuptial agreement, decedent left his wife, Margo Weizer (petitioner) a legacy of $25,000 (will, Item IV), and provided in Item V that she: ". . . shall have the right to continue to occupy our home at 642 Hoyt Road, Huntingdon Valley, Pennsylvania . . . as long as she shall desire." The will provides further that if she vacates the premises, the executors are to sell and distribute the proceeds in accordance with other provisions thereof.

Petitioner has continued to reside at the Hoyt Road property since decedent's death on August 28, 1979. The present controversy concerns who is responsible for payment of real estate taxes, sewer and water rent, utilities, lawn care and general maintenance expense. The widow claims the estate

is liable for these items, and the estate claims the contrary. The estate has paid the taxes and sewer rent. Petitioner has paid other utility charges, including electric, telephone, heat and water. Because the estate considers all of these items to be the responsibility of petitioner, the executors have refused to disburse the legacy of $25,000, holding it as "security" for taxes and sewer rent. The estate does agree that it is responsible for insurance on the premises and has maintained insurance in force at its expense.

Limited testimony was offered and received in response to petitioner's contention that the will is ambiguous, stating nothing about responsibility for payment of the above-mentioned items.

Petitioner was decedent's second wife. Shortly after their marriage, decedent requested that the parties execute a post nuptial agreement. Such an agreement was prepared and signed on November 12, 1974. It provided the benefits for petitioner noted above. Prior to its execution, petitioner's counsel objected to its terms on the basis, inter-alia, that it did not provide that petitioner would have the use of the furniture in the home which she was allowed to occupy. Decedent rejected that change.[1] The will was executed on the same day as the post nuptial agreement.

As of that date, petitioner was 70 years of age and had assets of $21,000, and social security income of about $270 per month. Decedent was familiar with her financial circumstances.

---

1. No objection was made as to the absence of any provisions in respect to taxes, sewer rent, utilities, maintenance, and the like — the matters here at issue.

Since decedent's death, taxes and sewer rent have exceeded $1,800 per year. The cost of other items in controversy is not of record.

The issues are these: (1) who is responsible for real estate taxes, sewer rent, water rent, utilities, lawn care and maintenance, the petitioner or the estate; (2) under any circumstances, may the executors continue to withhold distribution of petitioner's legacy; (3) is petitioner entitled to interest on the legacy; and (4) do the executors have a right to inspect the premises?

The first issue is the most troublesome. Petitioner contends that the will is ambiguous in that it states nothing one way or the other as to who shall be responsible for these charges. In such case, she urges that the court should, indeed must, attempt to ascertain the will of the testator from the circumstances surrounding him at the time he made his will. Pearson Estate, 442 Pa. 172, 180, 275 A.2d 336 (1971). She then argues that in view of her extremely modest means, testator must have known that she could not afford to live in the home if she were required to pay all of the disputed items, and therefore he must have intended that these be paid by the estate.

On the other hand, the estate argues that had the testator so intended, he would have specifically so provided. Not having done so, it asserts that the charges are properly petitioner's. Furthermore, it points to the fact that decedent declined to provide that the furnishings of the home remain for her use, and suggests since that is so, it cannot be said that he intended to confer these other benefits collateral to occupancy.

An ambiguity in a will may not be resolved by reference to circumstances surrounding a testator at the time of execution of the will where these cir-

cumstances are themselves ambiguous. For all we know, the testator may have concluded that with social security and $46,000,[2] petitioner could meet the expenses in question during her probable life expectancy. On the other hand, had specific reference been made to the magnitude of these expenses, he may very well have decided to specifically provide that they be charged to the estate. We may not attempt to surmise testator's intent by resorting to speculation or conjecture. Swope Estate, 383 Pa. 494, 497, 119 A.2d 57 (1956).

Notwithstanding our inability to resolve the issue by placing ourselves in decedent's armchair, Sinnott's Estate, 53 Pa. Super. 383 (1913) appears to resolve the question of who shall bear real estate taxes in this situation. The will there provided that the widow ". . . shall be permitted to occupy rent free my residence . . . for the terms of her life if she so desires . . . Upon my said wife ceasing to reside (therein) . . . I direct the same shall be sold by my executors." The court stated, at page 384:

"The only question presented is whether the estate, interest or privilege in the residence . . . was of such a nature as to impose upon her the legal duty to pay the annual taxes upon the property.

The appellant contends that the widow took a life estate . . . If this contention . . . is well founded, it is not seriously questioned that the liability for the taxes follows as a result."

(p. 387) "The right of the widow to occupy the residence is a personal privilege or license, not a life estate in land . . . The appellee (the widow) was not vested with such an estate in the land as to render her liable for the payment of the taxes . . ."

---

2. Petitioner's capital of $21,000 plus the $25,000 legacy.

The language of the will in Sinnott's Estate is indistinguishable from that presently before us.[3] Accordingly, we hold that petitioner has been given a right to occupy the home, as opposed to a life estate, and is not responsible for real estate taxes thereon.

The remaining charges partake of the nature of personal expenses, or user fees, and should be borne by the petitioner. Hence we hold that petitioner is liable for sewer and water rent, household utilities such as heat, electric and telephone, routine lawn care and general maintenance expense. Cf. Sanders Estate, 12 D.&C. 3d 204 (1979), Petersen Estate, 110 Montg. Co.L.R. 83, 88 (1981).

As to the executors right to withhold distribution, respondents have cited no authority in support thereof, and this court can find none. Respondents must therefore make distribution to petitioner in accordance with the terms of decedent's will. In addition, petitioner is entitled to interest pursuant to §3543(a) of the PEF Code. Under that section a pecuniary legacy bears interest at the rate of 3% per annum from one year after decedent's death until payment. In July, 1980, that section was amended to allow interest at the rate of five percent. (Section 13 of Act 1980, July 11, P.L. 565 No. 118). The amending act provides that Section 13 "shall take effect immediately and apply to interest accruing on or after January 1 of the year next following the date of final enactment." Consequently, interest which accrues after January 1, 1981, bears a five percent interest rate.

---

3. Except for the words "rent free", which appear in Sinnott's Estate. Those words have no significance in determining the nature of the interest bequeathed.

Decedent died on August 28, 1979. Thus from August 28, 1980 until January 1, 1981, petitioner's legacy accrued interest at the rate of three percent per annum, and from January 1, 1981, at the rate of five percent per annum.

Petitioner has requested this court to award a higher rate of interest, contending that the claim is actually under the post-nuptial agreement. As authority she cites Riehl Estate, 23 Fiduc. Rep. 540 (1973). While that case might be authority for the proposition that interest in such situations ought to equal the amount of interest the estate has earned on the withheld funds, we need not decide the point, as there is no evidence in the present matter as to what rate of interest was in fact earned by the estate.

The final issue involves respondent's right of inspection. Petitioner has agreed that inspection with advance notice, once or twice a year, is reasonable, but requests that it be performed only by Sylvia Chernow. At the oral argument respondent's counsel acquiesced to this condition.

In light of the foregoing discussion, we enter the following

## DECREE NISI

And now, July 6, 1983, it is hereby ordered and decreed that:

(1) Joseph Weizer and Sylvia Chernow, executors of decedent's estate, forthwith pay Margo Weizer her legacy under Item IV of decedent's will in full, with interest thereon at the rate of three percent per annum from August 28, 1980 until January 1, 1981, and at the rate of five percent per annum from January 1, 1981 until paid.

(2) The estate is responsible for the payment of real estate taxes on premises 642 Hoyt Road, Huntingdon Valley, PA, and Margo Weizer is responsible for the utility, sewer and water rent, routine lawn care and general maintenance for so long as she shall reside in said premises.

(3) Margo Weizer shall reimburse the estate for sewer rent paid by it from date of death to the present.

(4) Sylvia Chernow is authorized to inspect the subject premises twice a year at reasonable hours upon not less than 48 hours notice.

Unless exceptions are filed hereto within ten days of notice hereof, this decree shall become final as of course.