J-S12012-25

2025 PA Super 169

IN RE: ESTATE OF DAVID A. BYERLY   :   IN THE SUPERIOR COURT OF
                                        :   PENNSYLVANIA
                                        :
APPEAL OF: DAVID M. BYERLY       :
                                        :
                                        :
                                        :
                                        :
                                        :
                                        :   No. 2418 EDA 2024

Appeal from the Order Entered August 14, 2024
In the Court of Common Pleas of Delaware County
Orphans' Court at No:  0093-2020-O

BEFORE:  STABILE, J., McLAUGHLIN, J., and BENDER, P.J.E.

OPINION BY STABILE, J.:                   **FILED AUGUST 1, 2025**

Appellant, David M. Byerley, appeals from the orphans' court's order of August 14, 2024, denying his petition to sell estate property.  We affirm.

The Decedent, David A. Byerley, Appellant's father, passed away on August 10, 2019, leaving behind a will dated February 16, 2018 (the "2018 Will").  Appellant contested the 2018 Will, but the orphans' court admitted it to probate by decree of November 16, 2021.  This Court affirmed in a published opinion.  ***In re Estate of Byerley***, 284 A.3d 1225 (Pa. Super. 2022).[1]

Presently in dispute is the proper interpretation of the 2018 Will insofar as it concerns Decedent's home (the "Home").  The 2018 Will permits Mary

_____

[1]  This Court's previous opinion contains an extensive account of the underlying facts that we need not repeat.  In essence, Appellant contested the 2018 Will on grounds of McGurk's alleged undue influence over Decedent.

McGurk, Decedent's friend and caretaker, to occupy the Home for her lifetime or as long as she wishes. That provision has provoked a series of lawsuits between Appellant and McGurk. McGurk has sued Appellant for allegedly freezing several accounts on which she was Decedent's beneficiary, and Appellant has filed a suit against McGurk alleging dissipation of property. ***See*** Orphans' Court Opinion, 8/13/24, at 2-3.

In the present action, Appellant claims that the sale of the Home is necessary to satisfy Decedent's inheritance taxes. The disputed provisions of the 2018 Will are these:

> SECOND: I give, bequeath and devise my estate as follows: 1. I give and devise my premises known as 2587 Radcliffe Road, Broomall, PA 19008, unto my Trustee hereinafter named, IN TRUST NEVERTHELESS, to be used for the sole occupancy of my dear friend, MARY MCGURK, until she vacates said premises, or upon her death, whichever shall first occur, and upon the occurrence of either event, this Trust shall terminate. Thereafter, exclusive title to the property shall be transferred by my Trustee unto my beloved son, DAVID M. BYERLEY, per stirpes. During the term of her occupancy, MARY MCGURK shall be solely responsible to timely pay all utilities for said premises.
>
> THIRD. I direct that all taxes that may be assessed in consequence of my death, of whatever nature and by whatever jurisdiction imposed, shall be paid from my estate prior to any distribution to heirs or beneficiaries.
>
> […]
>
> FIFTH: My Executor, Trustee or other fiduciary to serve in any capacity relating to this Last Will and Testament or to my estate shall have the following powers, without Court approval, in addition to the powers granted by law to:
>
> […]

> 2. Sell at public or private sale, exchange or lease, for any period of time, any real or personal property and to give options for sales and leases;

2018 Will. Appellant is the executor and trustee.

The orphans' court concluded that the language of paragraph "Second" was sufficient to devise to McGurk a life estate in the Home, thus rejecting Appellant's argument to the contrary. The orphans' court also rejected Appellant's argument that, regardless of the nature of McGurk's interest in the Home, Appellant had authority to sell it under paragraphs "Third" and "Fifth." The court rejected that argument as well and therefore denied Appellant's petition to sell the Home. This timely appeal followed.[2]

Appellant presents three questions:

A. Does the [2018 Will] bequeath a life estate [in the Home] to Mary McGurk?

B. Are the assets set out on REV 1500 draft Schedules F and G probate assets?

C. Is Mary McGurk a specific devisee, who's [sic] joinder is required by 20 Pa.C.S.A. § 3351 to sell the property?

Appellant's Brief at 4.

Appellant's first question requires us to interpret a will. The interpretation of a will presents a question of law; our standard of review is *de novo*. **In re Estate of McFadden**, 100 A.3d 645, 650 (Pa. Super. 2014)

_____

[2] We observe that an orphans' court's order determining an interest in real property is immediately appealable. Pa.R.A.P. 342(a)(6); **In re Estate of Krasinski**, 218 A.3d 1246 (Pa.; 2019).

(*en banc*). "No rule regarding wills is more settled than the general rule that the testator's intent, if it is not unlawful, must prevail." *In re Estate of Shelly*, 950 A.2d 1021, 1025 (Pa. Super. 2008), *appeal denied*, 962 A.2d 1198 (Pa. 2008). "Moreover, the testator's intention must be ascertained from the language and scheme of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but is what is the meaning of his words." *Id.*

As noted above, the orphans' court found that Decedent left McGurk a life estate in the Home.[3] Findings of Fact and Conclusions of Law, 8/13/24, at p.5, ¶ 13. A life estate is an "estate whose duration is limited to the life of the party holding it, or some other person." *In re Paxson Trust*, 893 A.2d 99, 115 (Pa. Super. 2006) (quoting *Estate of Kinert v. Dept. of Revenue*, 693 A.2d 643, 645 (Pa. Cmwlth. 1997)), *appeal denied*, 903 A.2d 538 (Pa. 2006).

> A life estate arises when a conveyance or will expressly limits the duration of the created estate in terms of the life or lives of one or more persons, or when the will or instrument creating the interest, viewed as a whole, manifests the intent of the transferor to create an estate measured by the life or lives of one or more persons. A life estate has the quality of alienability, thus the life estate can be conveyed to a third person; but, the life estate holder cannot convey a greater interest than he/she possesses. Generally, the life estate holder is responsible for interest on any mortgage on the property, and has a duty to pay

---

[3] We are cognizant that the prior panel of this Court referred to McGurk's as a life estate. *Estate of Byerley*, 284 A.2d at 1227. We are not bound by that terminology, as the nature of McGurk's interest was not at issue in that case.

current taxes and assessments, by a municipality or other public authority, which do not exceed the probable duration of the life estate.

*Id.* (citations omitted).

A life estate is distinct from a right of occupancy, which permits the recipient to occupy the subject property but is not a property interest that can be transferred or alienated.[4] This Court examined the distinction in *Estate of Culig v. Appeal of Culig*, 134 A.3d 463 (Pa. Super. 2016). There, the decedent left to his wife "**the right to reside** [in his residence] **until such time as she shall cease to reside there**, until such time as she cohabits with any man not a member of her immediate family within the degrees of consanguinity, until her death, or until her remarriage, whichever shall first occur." *Id.* at 465. (emphasis in original). There, as here, the orphans' court held that the wife had a life estate.

In reversing the orphans' court, the *Culig* panel relied in part on *In re Sinnot's Estate*, 53 Pa. Super. 383 (1913). There, the decedent left to his wife the following interest in their marital home:

> I also direct that my said wife **shall be permitted to occupy rent free my residence known as Rathalla, situate at Rosemont, Montgomery County and State of Pennsylvania, for the term of her life if she so desire** and if

---

[4] The orphans' court did not expressly differentiate between a life estate and a right of occupancy. Twice in its conclusions of law, the court accurately described the 2018 Will as giving McGurk a right to reside in the home until she vacates it or dies. Findings of Fact and Conclusions of Law, 8/13/24, at p. 3, ¶ 1, p. 6, ¶ 17. As we explain in the main text, that language creates a right of occupancy, not a life estate.

my said wife should continue after my death to occupy Rathalla during the first two years of such occupancy I authorize and direct to be paid to her by my executors the sum of twenty-five thousand dollars a year during these two years for purposes of her support and the support of any of my family residing with her at said house. Upon my said wife ceasing to reside at or not wishing to occupy said Rathalla I direct the same shall be sold by my executors.

*Id.* at 384–85 (emphasis added). The question before the ***Sinnot's Estate*** Court was whether the wife was obligated to pay real estate taxes. A life estate carries that obligation; a right of occupancy does not. ***See id.*** at 384.

The ***Sinnot's Estate*** Court reasoned that, if the testator had stopped after the word "desire" (the final word in the passage emphasized just above), then a life estate might have been created. But because of the last sentence of the above-quoted passage ("Upon my said wife …") the Court concluded that the wife had only a right of occupancy. "The enjoyment by the widow of the right to occupy the residence depends upon the express condition that she shall continue to there reside." […] The right of the widow to occupy the residence is a personal privilege or license, not a life estate in land." ***Id.*** at 387.

Here, as in ***Sinnot's Estate***, the 2018 Will provides that the Home is "to be used for the sole occupancy of my dear friend, MARY MCGURK, **until she vacates said premises, or upon her death**, whichever shall first occur[.]. 2018 Will (emphasis added). Thus, the 2018 Will permitted McGurk to occupy the home, on condition that she continue to reside there. ***Culig*** and ***Sinnot's Estate*** teach that this condition defeats the creation of a life

estate. McGurk therefore enjoys a right of occupancy in the Home, not a life estate. The orphans' court erred in concluding otherwise, because the Decedent expressed his intent in the 2018 Will by using the precise terminology necessary to create a right of occupancy.

Under present circumstances, however, the orphan's court's error is not determinative of the outcome of this appeal. The reason for that becomes apparent on consideration of Appellant's remaining arguments.

Appellant's second argument is meant to challenge the orphans' court's finding that Decedent's estate has sufficient assets to satisfy the inheritance tax without selling the home. The orphans' court found as follows: "Respondent has proven that there are sufficient assets listed in Schedules E, F, and G to pay the inheritance tax." Findings of Fact and Conclusions of Law, 8/13/24, at p.3 ¶ 3. The import of Appellant's second question is that the orphans' court reached this conclusion in error, but nowhere in the body of his brief does he develop any supporting argument. Appellant has divided the argument section of his brief into sections that do not correspond to his questions presented, in violation of Pa.R.A.P. 2119(a). And his failure to provide citations to pertinent legal authority and to the record render this issue unreviewable. Pa.R.A.P. 2119(b), (c); *Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa. Super. 2001).

Appellant's failure to challenge the orphans' court's finding is fatal to his third and final argument, which arises under 20 Pa.C.S.A. § 3351:

> Except as otherwise provided by the will, if any, the personal representative may sell, at public or private sale, any personal property whether specifically bequeathed or not, and any real property not specifically devised, **and with the joinder of the specific devisee real property specifically devised**. When the personal representative has been required to give a bond, no proceeds of real estate, including proceeds arising by reason of involuntary conversion, shall be paid to him until the court has made an order excusing him from entering additional security or requiring additional security, and in the latter event, only after he has entered the additional security.

20 Pa.C.S.A. § 3351 (emphasis added). Appellant argues that the trial court could have ordered the sale of the Home under § 3351, despite McGurk's right of occupancy, to save Decedent's estate from insolvency. But because of the orphans' court's unrefuted finding that the estate has sufficient assets to satisfy the estate taxes without selling the Home, Appellant has not established any need to sell the Home.

Thus, we end where we began, with the applicable standard of review: the testator's intent, if it is not unlawful, must prevail. *Estate of Shelly*, 950 A.2d at 1025. Decedent intended to give McGurk a right of occupancy. Appellant admits as much in his brief. Further, Appellant has failed to establish that McGurk's right of occupancy in the Home must yield so that estate taxes can be satisfied, nor does he offer any other reason for disturbing Decedent's intent. We further observe that the orphans' court credited McGurk's testimony rather than Appellant's, and the orphans' court found that Appellant "wants the [Home] for himself, and/or the sales proceeds for

himself, to the exclusion of [McGurk]." Findings of Fact and Conclusions of Law, 8/13/24, at pp.5-6, ¶¶ 11, 16.

The orphans' court ultimately concluded as follows: "Based upon the record, the orphans' court finds [Appellant's] request to sell the [Home] is denied and that [McGurk] shall be permitted to reside in the subject property until she vacates or upon her death." *Id.* at p.6, ¶ 17. Despite the orphans' error in deeming the interest to be a life estate rather than a right of occupancy, the language in paragraph 17 is exactly correct. Finding no error in the court's denial of Appellant's petition to sell the Home, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/1/2025